Filed 4/14/25

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVEN L. GOMES,　　　　 Plaintiff and Respondent,　 v.　 MENDOCINO CITY COMMUNITY SERVICES DISTRICT,　　　　 Defendant and Appellant. | A167862　 (Mendocino County Super. Ct. No. 21CV00177) |

Steven Gomes filed the underlying action to invalidate ordinances that regulate groundwater use in the unincorporated town of Mendocino. The ordinances were adopted by the Mendocino City Community Services District (the district), which has been authorized by the Legislature to manage the town's groundwater resources pursuant to Water Code, sections 10700 through 10717 (hereafter, the Act).[1] In the trial court, the district disputed Gomes's claims on the merits, and it also argued that this action is barred by res judicata because Gomes asserted the same primary right in a prior action challenging the district's groundwater management program, *Gomes v.*

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

[1] All statutory references are to the Water Code unless otherwise indicated. All references to "Ordinance" are to measures adopted by the Mendocino City Community Services District.

1

*Mendocino City Community Services Dist.* (2019) 35 Cal.App.5th 249 (*Gomes I*). Following a court trial, the court found the ordinances contain an invalid attorney's fee provision but otherwise rejected Gomes's claims on the merits.

On appeal, Gomes contends the judgment must be reversed because the ordinances impose fees for groundwater extraction that voters must approve in an election, which the district did not hold. (See § 10710.) We conclude this claim is not barred by *Gomes I*, which involved an earlier generation of ordinances and construed different provisions of the Act. However, in the published portion of the opinion we reject Gomes's claim on the merits and affirm the judgment. As we shall explain, although the ordinances Gomes challenges in this action impose fees on property owners that relate to the district's groundwater management services, these fees are not imposed "for the extraction of groundwater" (§ 10710) and, thus, do not require voter approval in the manner set forth in section 10710.

## BACKGROUND

### *The District's Authority*

The district was established under the Community Services District Law. (Govt. Code, §§ 61000, et seq.) Community service districts provide public facilities and services, and can function "as an alternative to the incorporation of a new city," or as a "transitional form of governance as [a] community approaches cityhood." (*Id*., § 61001, subds. (b)(3), (b)(4).) In the town of Mendocino, the district was established to manage a wastewater treatment plant, and it subsequently began providing sewer and light services.

The Act, which was added to the Water Code in 1987, "applies only to the area within the existing boundaries" of the district. (§ 10700.) Mendocino does not have a community-wide water system; its residents rely

2

on groundwater drawn from wells.  The Act authorizes the district to "establish programs for the management of groundwater resources" (§ 10702) and establishes procedures the district must follow to enact such a program, which include noticed public hearings and an opportunity for registered voters to file written protests (§§ 10703–10706).  If the district proposes a groundwater management program that garners protests from more than 50 percent of eligible voters, the "program shall be abandoned," and the district may not consider another program for a period of one year.  (§ 10706.)

The Act also authorizes the district to "fix and collect rates for the extraction of groundwater" (§ 10708), and to "levy a water replenishment assessment" (§ 10709).  Before the district may levy a water replenishment assessment or "otherwise fix and collect rates for the extraction of groundwater," it must hold an election and obtain the majority approval of the voting electorate.  (§ 10710.)

### *The Groundwater Management Program and* Gomes I

In 1990, the district established its first groundwater management program by adopting Ordinance No. 90-1.  (*Gomes I*, *supra*, 35 Cal.App.5th at p. 254.)  Ordinance No. 90-1 required, among other things, that a property owner obtain a groundwater extraction permit for a new development, for a change in use, or for a newly constructed or modified well.  (*Gomes I*, at p. 254.)  Most permit applicants were also required to comply with other requirements, such as obtaining a hydrological study, installing a water meter, and accepting an allotment that limited the amount of groundwater they could extract.  (*Ibid*.)  Ordinance No. 90-1 was enacted in compliance with the procedures outlined in sections 10703 through 10706.  (*Gomes I*, at p. 254.)

3

After enacting Ordinance No. 90-1, the district adopted other groundwater measures without complying with the procedures specified in section 10703 through 10706. (*Gomes I*, *supra*, 35 Cal.App.5th at p. 254.) Three such measures were addressed in *Gomes I*. Ordinance No. 07-01, adopted in early 2007, required a property owner to obtain a permit and allotment whenever property was sold, even if there was no change in use or new construction. Later in 2007, the district adopted a resolution to establish a water shortage contingency plan along with Ordinance No. 07-04, which implemented that plan. (*Gomes I*, at p. 254.) The plan provided, among other things, that if the district declared a "stage 4 'water shortage emergency,' " all property owners with developed parcels would be required to obtain a " 'a groundwater extraction permit with an allotment.' " (*Id*. at pp. 254–255) Once this requirement was triggered, it would remain in effect "in perpetuity" even if drought conditions dissipated. (*Id*. at p. 255.)

Steven Gomes owns a 1.8-acre parcel of property in Mendocino, located in the district. In 2014, Gomes was notified that he was required to obtain a groundwater extraction permit and allotment, as a stage four water emergency condition had been declared. (*Gomes I*, *supra*, 35 Cal.App.5th at p. 255.) In December 2014, the district lowered the drought condition to stage one, but because the permit and allotment requirement had already been triggered, the district maintained that Gomes was required to obtain a permit and allotment. (*Ibid*.) Gomes objected, both initially and after the drought level was lowered. The district's governing board held hearings to address Gomes's objections and concluded Gomes was obligated to obtain a permit, and was subject to penalties should he fail to comply. In 2015, Gomes filed his petition and complaint for declaratory relief in *Gomes I*, contending that the 2007 measures were invalid on numerous grounds. (*Id*. at pp. 255–

4

256)  The trial court denied the petition following a court trial, but in May 2019 the judgment was reversed on appeal.  (*Id*. at pp. 256, 261.)

The *Gomes I* court made two material findings that assist us in resolving the present appeal.  As a preliminary matter, the court found that the district has authority to limit the right of property owners to extract groundwater from their land.  (*Gomes I*, *supra*, 35 Cal.App.5th at pp. 256– 258.)  Gomes had argued that the district had no such authority, as it was not expressly conferred in the Act.  (*Id*. at pp. 256–257.)  Gomes raised this issue for the first time on appeal, but it was a legal question and the court rejected it on the merits.  The court found that the district's "authority to manage groundwater necessarily includes the ability to limit the quantity of water that individual users may extract."  (*Id*. at p. 257; see also p. 258.)

Second, the *Gomes I* court found that the 2007 measures Gomes challenged were invalid because the district had not complied with procedures prescribed by the Act for enacting programs for the management of groundwater.  (*Gomes I*, *supra*, 35 Cal.App.5th at pp. 258–260.)  The district had argued the Act's procedural requirements applied only to the adoption of Ordinance No. 90-1, the extraction permit ordinance, and that once that program was properly enacted, all subsequent ordinances "were merely amendments of the original program that need not have been adopted in conformity with those procedures."  (*Gomes I*, at p. 258.)  The trial court agreed with the district, expressing concern that requiring compliance with the Act's procedural requirements for every ordinance no matter how inconsequential would "render the operation of a management plan unnecessarily and unreasonably unwieldy."  (*Id*. at p. 259.)  But the *Gomes I* court found that the trial court had misconstrued the law and reversed the judgment.  (*Id*. at pp. 259, 261.)

As the *Gomes I* court explained, the procedures codified in sections 10703 to 10706 are mandatory and are not limited to the enactment of an " 'initial' " water management program. (*Gomes I*, *supra*, 35 Cal.App.5th at p. 259.) Moreover, the court found, "the obvious policy underlying the Act is to permit the property owners who will be affected by a groundwater management program to participate meaningfully in the development of the program and to reject the program" if they disapprove, and yet the district had adopted its water shortage contingency plan "without giving the majority of the eligible residents the opportunity to reject the plan, as the statute requires." (*Ibid.*) The *Gomes I* court also found that, even if "inconsequential amendments may be made to a program without complying with the procedural requirements of the Act," the amendments before it were hardly inconsequential. (*Ibid.*)

Ultimately, the *Gomes I* court reversed the judgment with directions for the superior court to issue a declaratory judgment declaring that Ordinance No. 07-01, Ordinance No. 07-04, and the resolution establishing a water shortage contingency plan were void because they were not adopted in the manner prescribed by sections 10703 through 10706. (*Gomes I*, *supra*, 35 Cal.App.5th at p. 261.)[2]

### The District's Monthly Groundwater Management Charges

In June 2018, before the appeal in *Gomes I* was decided, the district enacted Ordinance No. 2018-3, which was captioned as an ordinance establishing a charge for groundwater management. Before adopting this

---

[2] Following remand, the trial court awarded Gomes attorney's fees (Code Civ. Proc., § 1021.5), and that order was affirmed in an unpublished decision by the same court that decided *Gomes I*. (*Gomes v. Mendocino City Community Services Dist.* (May 27, 2021, A160420) [nonpub. opn].)

ordinance, the district issued a public notice of its intent to institute an amended monthly management charge. The notice apprised property owners that, because the district's management charge is "property-related," and in order to comply with Proposition 218 and Article XIII D of the California Constitution, the district would hold a public hearing and afford property owners the opportunity to object to the charge.[3] Before it adopted Ordinance No. 2018-3, the district had funded its water management activities with a surcharge on residents' monthly sewer fees. The new ordinance increased this groundwater management charge from 11 percent to 21 percent of sewer fees.

Ordinance No. 2018-3 provides that "all developed parcels located within the District boundary that extract groundwater from privately owned well(s) or receive water extracted from mutual water company well(s)" shall pay the district a "Charge for Groundwater Management." The charge is calculated using the equivalent single-family dwelling (ESD) concept already in use for assessing monthly sewer fees. This approach estimates water usage of 200 gallons per day for a two-bedroom single-family residence—a

---

[3] Proposition 218 is one of a series of measures adopted by state voters to limit the authority of state and local governments to impose taxes and fees. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 258-260.) Among other things, it establishes procedures for adopting property-based assessments; it requires the agency to hold a public hearing and bars imposition of an assessment if a sufficient number of parcel owners within the assessment area submit ballots in opposition to the assessment. (*Id.* at p. 259.) These requirements in Proposition 218 are roughly similar to the Act's majority-protest provision, except that balloting may be by parcel (or require a super-majority vote), whereas the Act tallies the number of protest votes cast by eligible registered voters residing in the district, looking for a simple majority. (Compare Cal. Const., art. XIII D, §§ 4, subds. (c)-(e) & 6, subds. (a) & (c) with § 10706.) The district's compliance with Proposition 218 is not at issue in this appeal.

7

single ESD—and then scales the number of ESDs for a property up or down based on estimated water use for that type of property (e.g., a guest cottage adds .5 ESD; a laundromat is assessed at .2 ESDs). The ordinance establishes a charge for groundwater management of $10.63 per month, per ESD, regardless of the amount of groundwater a property extracts or uses.

***The 2020 Groundwater Management Program***

In 2020, after *Gomes I* was decided, the district adopted a series of ordinances that gave rise to the current action. Ordinance Nos. 2020-1, 2020-2, and 2020-3 and three related resolutions (collectively, the 2020 measures) establish groundwater management regulations and fees, and a water shortage contingency plan.

Ordinance No. 2020-1 is captioned as a groundwater extraction permit requirement for all real property in the district. It requires, among other things, that all developed parcels must have a valid groundwater extraction permit and limit groundwater extraction to an allotment approved by the district. To obtain the required permit, the property owner must submit a written application accompanied by a "fee in an amount determined by the Board to cover the cost of administering this groundwater extraction permit process." Many applicants must submit a hydrological study and pay a fee "as determined by the Board to cover the cost" for the district to review the study. All applicants must agree to install a water meter, and once an extraction permit is issued, the permittee must submit monthly meter readings to the district. Ordinance No. 2020-1 imposes misdemeanor and financial penalties for failure to comply with the permit and/or allotment requirements, and it contains a prevailing party attorney's fee provision.

Ordinance No. 2020-2 is captioned as a water contingency plan. Among other things, this ordinance establishes water conservation policies and year-

8

round water conservation measures, and it incorporates a water shortage contingency plan that the district adopted pursuant to a related resolution. This ordinance establishes misdemeanor and financial penalties, as well as other enforcement procedures, and contains a prevailing-party attorney's fee provision.

Ordinance No. 2020-3 is captioned as an ordinance to set fees and charges for the 2020–2021 fiscal year, and thereafter unless revised. This ordinance is not limited to groundwater management programs but lists all fees and charges adopted by the district. It incorporates an Exhibit 1, consisting of a list of district fees and charges, and it repeals and replaces all existing fees and charges that conflict with the Exhibit 1 fee schedule. Pertinent here, Exhibit 1 sets forth fees relating to Ordinance No. 2020-01 as follows: $200 for an administrative permit; $300 for Board permit approval; and $700 for hydrological study approval. Exhibit 1 also continues the amount of the monthly groundwater management charge imposed pursuant to Ordinance No. 2018-3 at $10.63 per ESD.

**The Present Action**

In April 2021, Gomes initiated this action by filing a petition and complaint for declaratory relief. Gomes alleged that after *Gomes I* was decided, the district exceeded its authority and failed to proceed in a manner required by law when adopting the 2020 measures. Gomes's pleading is difficult to decipher, but, indisputably, he did not allege that the district failed to comply with sections 10703 through 10706, as in *Gomes I*.

Instead, Gomes challenged aspects of the 2020 groundwater management ordinances on various legal grounds, which he incorporated into causes of action seeking multiple forms of writ, declaratory, and injunctive relief. Pretrial proceedings included a motion for judgment on the pleadings,

9

which was denied in early October 2022, a few weeks before the scheduled court trial. In denying the motion, the court observed that disputes about whether and what issues were properly before the court could be resolved at trial.

The evidence phase of trial was conducted over two court days in late October 2022. Gomes challenged the 2020 measures on the following grounds none of which remains at issue in the appeal: the district failed to obtain required approval from the Local Agency Formation Commission; permit and management fee provisions violate articles XIII C and XIII D of the California Constitution; the district failed to comply with the Sustainable Groundwater Management Act; an attorney's fee provision in the ordinances is unlawful; and a member of the district board that adopted the measures had an impermissible conflict of interest. In addition, Gomes argued that provisions in the 2020 ordinances that authorize the district to collect fees from property owners violate section 10710 because they were not approved by a majority of the voting electorate within the district. Gomes made this claim at trial, which is the issue on appeal, even though it was not expressly alleged in his pleading.

After the parties presented their evidence, they filed posttrial briefs. In February 2023, the court obtained supplemental briefs addressing specifically whether section 10710 applies to fees imposed by the district for groundwater management.

On March 20, 2023, the court filed its decision, setting forth its findings in a nine-page order. The court rejected all of Gomes's claims, save one. It found that Ordinance Nos. 2020-1 and 2020-2 each contain an invalid provision purportedly authorizing the district to recover attorney's fees and costs for prevailing in litigation " 'concerning this ordinance.' " (Italics

10

omitted.)  The court found the district "lacks the statutory authority for the fee-shifting provisions in its Ordinances."  As the district has not appealed this ruling, we take it as established that these attorney's fee provisions are unauthorized and invalid.  (*Briggs v. Nilson* (1964) 226 Cal.App.2d 342, 349 [respondent who does not cross-appeal cannot seek "reversal or modification" of judgment].)  The trial court also found that the attorney's fee provisions can be severed from the ordinances without affecting other provisions, a finding Gomes does not challenge on appeal.

Of the other issues resolved by the trial court, two of its findings are relevant to the present appeal.  First, Gomes argued that permit and management fees imposed in the 2020 measures are unlawful under provisions in Proposition 218 that added articles XIII C and XIII D to the California Constitution.  Rejecting this claim, the court found that the permit and management fees were actually adopted in prior ordinances that Gomes had not challenged in this action.  Gomes failed to cite authority for his assumption that a "mere recitation of fees previously adopted and unchallenged" required compliance with Proposition 218, the court found.  Moreover, the trial evidence showed that the district had, "out of an abundance of caution," elected to comply with "the procedures set forth in Article III C and D" when it previously adopted these fees, so the court found it unnecessary to resolve the parties' dispute about whether such compliance was actually required.

Second, Gomes argued that the management fee charged by the district is invalid under section 10710 even if the district complied with Proposition 218 before it adopted Ordinance No. 2018-3.  According to this argument, the district could not validate its management fee by complying with Proposition 218 because that procedure subjects the fee to a majority-protest vote,

11

whereas section 10710 of the Act requires that " 'a majority of the votes cast at the election shall be in favor of the' proposed fee." (Quoting § 10710.) Concerned about a possible conflict between these voting procedures, the court requested supplemental briefs addressing (1) whether section 10710 applies to fees imposed pursuant to Ordinance No. 2018-3 and restated in Ordinance No. 2020-3, and (2) whether section 10710 preempts Article III D and Proposition 218. On the basis of this briefing, the court concluded that section 10710 does not apply to the management fee at all and, therefore, "any perceived conflict between the required voting procedures" was "not an issue to be resolved."

In concluding that section 10710 does not apply to the 2020 measures, the court construed it as applying only to charges "for the amount" of water extracted by a homeowner, not to a "flat amount" that has no relationship to "how much groundwater any user extracts." The district's supplemental brief "sufficiently clarified" for the court that the monthly management fee of $10.63 is not a "fixed rate to be charged based on the quantity of groundwater each user extracts." And, based on that showing, the trial court rejected Gomes's contention that section 10710 applied.

Thus, with the exception of the attorney's fee provision in two of the 2020 measures, the court found in favor of the district and ruled that the "remainder of the Ordinances will remain intact." Judgment was entered, and notice of its entry served on March 27, 2023.

## DISCUSSION

Gomes "cabins" his appeal to the issue whether fees imposed by the district must be adopted pursuant to section 10710, with its requirement for voter approval through an election. Gomes does not challenge the district's compliance with sections 10703 to 10706 nor with Proposition 218, both of

12

which have mechanisms for securing popular approval through a majority-protest procedure.

Yet Gomes seeks broad relief, contending that the district's entire groundwater management scheme must be declared invalid. In developing this theory, Gomes recognizes little or no distinction between the different types of charges the district has enacted. He contends they are all "fees charged as a condition of using groundwater," and on that basis are subject to section 10710. Taking a similar all-or-nothing approach, the district posits that Gomes's claim that the district violated section 10710 is barred and fails on the merits because section 10710 does not apply to any aspect of its groundwater management programs.

In addressing these matters, we review the trial court's factual findings for substantial evidence, while independently reviewing its conclusions on legal issues. (*Cal Fire Local 2881 v. California Public Employees' Retirement System* (2016) 7 Cal.App.5th 115, 123.)

## I. Gomes Is Not Barred From Challenging the District's Fees

We begin by addressing the district's contentions that principles of res judicata and forfeiture preclude Gomes from challenging fees attendant to the groundwater management programs. We disagree.

### A. Res judicata

The doctrine of res judicata, which consists of two parts, "describes the preclusive effect of a final judgment on the merits." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Ibid*.) "Whether the doctrine of res judicata applies in a

13

particular case is a question of law which we review de novo." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228 (*City of Oakland*).)

With respect to claim preclusion, there are three requirements: the prior litigation must have resulted in a final judgment; the parties in the second lawsuit must be the same or in privity with the parties in the first lawsuit; and the second lawsuit must involve the same cause of action. (*City of Oakland, supra*, 224 Cal.App.4th at p. 228.) As there is no dispute the first two requirements are met, we limit our discussion to whether the current action involves the same cause of action alleged in *Gomes I*.

"A claim raised in a second suit is 'based on the same cause of action' as one asserted in a prior action if they are both premised on the same 'primary right.' [Citation.] 'The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty.' " (*Estate of Dito* (2011) 198 Cal.App.4th 791, 801.)

Applying these principles, we conclude that the current action and *Gomes I* are based on different primary rights. The claims in *Gomes I* were based on the right to be free from specific regulations promulgated in 2007 that were not authorized by statute, whereas here Gomes bases his claim on the right to be free from similar, but not identical, regulations the district promulgated in 2020. Gomes alleges the same type of injury in both cases, i.e., that he is being subjected to invalid regulations relating to his use of groundwater, but the injury itself is not the same because the second action

14

challenges the 2020 measures, not the 2007 measures that were deemed void in *Gomes I.*

The district contends that claim preclusion should apply because the "two suits address *nearly* identical successor ordinances." (Italics added.) We think the pertinent fact is that Gomes is not challenging the same ordinances that were declared void in *Gomes I.* The district relies on *Atwell v. City of Rohnert Park* (2018) 27 Cal.App.5th 692 (*Atwell*), which involved a petition challenging a city's approval of a project to expand an existing Wal-Mart store, a project alleged to be inconsistent with the city's land use policies. The *Atwell* court found that the petition was barred by res judicata because a prior petition challenging the city's prior approval *of the same project* had asserted the same claim. (*Id.* at pp. 694–695.) *Atwell* is inapposite, as that case involved a project that was approved and then reapproved after unrelated changes to the project's environmental impact report. (*Id.* at p. 697.) Between the two approval votes, the project remained unchanged, and both approving resolutions declared it to " 'be consistent with the General Plan and Zoning Ordinance.' " (*Id.* at p. 701.) Because there were no changes of material fact between the petition challenging the first approval and the petition challenging the second, the *Atwell* court concluded the petitions raised the same claim, so the second petition was barred by res judicata. (*Id.* at p. 702.)

By contrast here, the district's 2007 permit ordinance and water shortage contingency plan were declared void, and the present action involves replacement ordinances the district adopted in 2020. On a practical level, the package of 2020 ordinances differed from its predecessor because the new groundwater management charge was almost twice the size of its 2007 predecessor. On a conceptual level, the 2020 ordinances comprised a specific

15

program that the district adopted pursuant to its authority to manage groundwater resources, and *Gomes I* teaches that the district must comply with the Act each time it adopts a groundwater management program, rather than relying on having previously complied with the Act in adopting earlier versions of the program. (*Gomes I*, *supra*, 35 Cal.App.5th at p. 259.) The district's adoption of a new groundwater management program to replace the one struck down in *Gomes I* is thus not comparable to a second vote approving an unchanged store expansion project with an unchanged finding that the project complied with city land use policies. What we have here are " 'distinct episodes of purported noncompliance regarding "the same general subject matter," ' " which are not enough for claim preclusion. (*Atwell*, *supra*, 27 Cal.App.5th at p. 700.)

The district fares no better under its theory of issue preclusion. "In order for issue preclusion to apply, the following elements must be met: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1132 (*Williams*).) "The party asserting issue preclusion has the burden of establishing the above elements." (*Ibid.*)

The first requirement for applying collateral estoppel, the identical issue requirement, " ' "addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." ' " (*Williams*, *supra*, 100 Cal.App.5th at p. 1132.) The issue

16

raised by this appeal is whether fee provisions in the district's 2020 measures are valid. This identical issue was not raised in *Gomes I*, which pertained to 2007 measures and, as best we can tell, had nothing to do with fee provisions. As the district cannot carry its burden of identifying an identical issue, it also fails to show any such issue was actually litigated or necessarily decided.

The district attempts to satisfy the identical issue requirement by defining the dispositive issue in *Gomes I* so broadly as to subsume the claim Gomes raises in the present appeal. According to this multipart argument: the issue in *Gomes I* was "the proper procedure" for enacting a groundwater management program; the *Gomes I* court actually decided this issue by concluding that the district was required to comply with procedures specified in sections 10703 through 10706; and in reaching its conclusion, the court necessarily found that the district is not required to comply with sections 10708 through 10710 in enacting a groundwater management program that imposes fees.

Nothing in the structure of the Act or the substantive provisions themselves supports the district's premise that the procedures set forth in sections 10702 through 10706 are exclusive of the procedures set forth in sections 10708 through 10710. Rather, the Act establishes a comprehensive framework whereby the district must follow a majority-protest procedure to enact its program(s) (§§ 10702–10706), and it must also obtain affirmative voter approval before imposing certain rates and assessments as specified in sections 10708 through 10710. *Gomes I* did *not* hold or intimate that the district could avoid the requirements of sections 10708 through 10710 by complying with sections 10702 through 10706. More to the point, *Gomes I* did not address whether fees associated with the district's groundwater management services must be approved pursuant to the procedure codified in

17

section 10710.  Contrary to the district's appellate argument, the issue presented here was not raised, litigated, or decided in *Gomes I*.

The district suggests issue preclusion should apply because the 2007 groundwater management programs challenged in *Gomes I* contained fee provisions that were substantively similar to fee provisions in the 2020 program that Gomes challenges in this case.  Again, the district misconstrues the requirements for collateral estoppel, which applies only to an issue that was "actually litigated" and "necessarily decided."  (*Williams*, *supra*, 100 Cal.App.5th at p. 1132.)  Even if the 2007 fee provisions had been identical to 2020 fee provisions, the 2007 measures were declared void in a final decision that did not address whether they were subject to the requirements of section 10710.  (See *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1566 [" ' "former judgment is not a collateral estoppel on *issues which might have been raised but were not*" ' "].)

## B.  This Court May Review the Merits of Gomes's Claim

The district contends that Gomes waived his claim that the current groundwater program violates section 10710 because he alleged no such violation in his pleading.  We are not persuaded by this argument because it overlooks material facts.  The record shows that section 10710 was put at issue, at least by implication, in the pleadings and that its potential applicability was briefed and decided in the trial court.[4]  The district cites no

_____

[4]  Gomes's petition challenges the district's authority to adopt the 2020 measures, and it expressly challenges provisions imposing fees.  Moreover, in answering the petition, the district alleged the 2020 measures were adopted under "sections 10700 et seq.," and two of its affirmative defenses invoked "sections 10700, et seq." as a basis for denying the petition.  In its statement of decision, the trial court found that in order to rule on issues raised by the pleadings, it needed to "consider the specific statutory scheme relating to the operation of this District as a whole."  Accordingly, the court obtained

18

authority barring appellate review under analogous circumstances. Instead, it cites two lines of inapposite authority, one applying the rule that issues raised for the first time on appeal need not be considered (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326), and the other applying the rule that the pleadings delimit issues that may be decided on summary judgment. (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201, fn. 5, citing *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.) This case was not decided on summary judgment, and the claim Gomes presses on appeal was raised in the trial court, so this authority is unavailing.

The district argues that even after the trial court agreed to address section 10710, Gomes failed to develop his argument adequately in the trial court, and his opening brief on appeal is similarly "inchoate." " 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) But we disagree with the district that Gomes has in this case waived his right to challenge the 2020 measures for failure to comply with section 10710.

## II. Analysis

Gomes contends the 2020 measures are void in their entirety because the district failed to obtain voter approval in a "referendum" for the fees they impose, as he asserts section 10710 requires. The district takes the opposite view, seeking affirmance of the judgment on the ground that section 10710 does not apply to any fee it currently charges in connection with its groundwater management activities. As the applicability of section 10710 turns on statutory construction, our review is de novo. (*Asian Americans*

supplemental briefing and addressed the merits of Gomes's section 10710 claim in its final decision.

19

*Advancing Justice—Los Angeles v. Padilla* (2019) 41 Cal.App.5th 850, 863, fn. 11.)

## A. Sections 10708 and 10710 Apply to Rates for Extracting Groundwater

The Act requires that the district hold an election before collecting "rates for the extraction of groundwater." (§§ 10708, 10710.) Section 10708 authorizes such charges: "A local agency which establishes a program for the management of groundwater resources pursuant to this part may fix and collect rates for the extraction of groundwater to pay expenses incurred by the local agency for purposes of groundwater management." To exercise this authority, however, the agency must comply with section 10710, which states: "Before a local agency may levy a water replenishment assessment . . . or may otherwise fix and collect rates for the extraction of groundwater pursuant to this part, the local agency shall hold an election on the proposition of whether or not the local agency shall be authorized to levy a water replenishment assessment or to fix and collect rates for the extraction of groundwater, and a majority of the votes cast at the election shall be in favor of the proposition."

Both of these provisions apply specifically to "rates for the extraction of groundwater" (§§ 10708, 10710), and the parties disagree about what this language means. "Our fundamental task in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law." (*Department of Water Resources Cases* (2021) 69 Cal.App.5th 265, 277.) We begin by examining the statutory language, which is generally the best indicator of legislative intent, giving the words in the statute their ordinary meaning and construing them in context. (*Ibid*.) If the language is clear and unambiguous, then as a general rule there is no need for judicial construction. But if adopting a literal meaning would frustrate the manifest

20

purpose of the statute or lead to an absurd result, or if the plain meaning of the statute does not resolve adequately the issue presented, courts may employ extrinsic aids, such as the statutory history, to assist in ascertaining legislative intent. (*Ibid*.) A court may also consider " 'the impact of an interpretation on public policy, for "[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." ' " (*Id*. at p. 278.)

The word "rate" when used as a noun is commonly understood to mean an amount as measured against something else, such as a fixed price or charge. (See Merriam-Webster's 11th Collegiate Dictionary (2003) p. 1032.) Both parties acknowledge this generally understood definition, but add spins to suit their respective litigation positions. Gomes takes the view that a rate in this context means any charge relating to groundwater management. The district posits that because the word "rate" is used in a regulation, it refers specifically and exclusively to a per-unit charge for groundwater. We reject both contentions. Although we agree with the parties that context matters, we find the relevant context in the statutes themselves. The Legislature did not require voters to approve in an election all groundwater-related charges, nor did it limit application of sections 10708 and 10710 to per-unit charges for extracting groundwater. Under the plain statutory language, a rate that requires majority voter approval is *any* charge that is assessed for a specific activity: "the extraction of groundwater."

As the statutory language is clear on this point, we see no need for extrinsic aids. We note, however, that legislative history presented at trial reinforces our straightforward reading of these statutes. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9 [published legislative history may be cited without a request for judicial notice].) The

21

Legislative Counsel's Digest for Assembly Bill No. 786 (1987–1988 Reg. Sess.) (Assem. Bill 786) indicates that the intended purpose of the Act was to authorize a local agency already authorized to provide water services within the district to do the following:  establish "programs for the management of groundwater resources within the area . . . in accordance with prescribed procedures"; exercise specified powers of a water replenishment district; and, "subject to approval of the voters of the agency, to fix and collect rates for the extraction of groundwater or to levy a water replenishment assessment."  On appeal, Gomes contends this legislative history material "bears no weight," as it is "nothing more than a general recap of the text of the statutes."  In our view, the fact that the Legislative Counsel's description of this bill mirrors the plain language of the statutes is an indication that the Legislature said what it meant in the Act.

Gomes argues these statutes should be construed to apply to any fee or charge in a groundwater ordinance because the "actual legislative history" shows the sponsor of Assembly Bill 786 believed the district's entire groundwater program would have to be approved by " 'a majority vote of the residents of the District.' "  As support for this argument, Gomes has filed a motion requesting judicial notice "of the fact of the existence of the legislative history of 1987 Assembly Bill 786."  Gomes attached to his motion more than 200 pages of material, apparently a large number of separate items culled from different sources, which Gomes's counsel represents as the legislative history of 1987 Assembly Bill 786.

First, we think Gomes is misinterpreting his own proffered legislative history.  He also quotes the sponsor of the bill as explaining, a " 'plan would have to be approved by a majority of the registered voters living in the district through a process of public meetings.' "  This is, of course, an accurate

description of the majority-protest provision in sections 10703–10706, and suggests that it may have been these provisions, rather than the election procedure required by section 10710, to which the sponsor was referring in mentioning "a majority vote of the residents."  But more fundamentally, "statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation."  (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062; see also *ibid.*, fn. 5.)

Gomes I has already established that affirmative voter approval "is not required for adoption of a groundwater management program; rather, compliance with the 'enhanced adoption procedure' specified in sections 10703 through 10706 is required."  (*Gomes I*, *supra*, 35 Cal.App.5th 248, 259, fn. 13 [discussing provisions for notice, hearing, and majority-protest vote].) The issue in this case, which was not resolved in *Gomes I*, is which if any of the fees collected by the district constitutes a rate that requires voter approval under section 10710.  Gomes does not contend that his proffered legislative history sheds light on this issue, and for that reason his motion for judicial notice is denied.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue"].)[5]

---

[5]  Further, on its face Gomes's motion seeks judicial notice only of the *fact* that a legislative history for Assembly Bill 786 exists, which is indisputable but irrelevant.  Gomes's implicit request for judicial notice of the *content* of certain documents in his proffered legislative history is not supported by a showing that any specific item meets the requirements for judicial notice.  (See e.g. *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 168, fn. 2 [news articles not considered by the Legislature may not be judicially noticed as legislative history].)

For its part, the district professes itself willing to rely on the plain statutory language, but contends the " 'plain, commonsense' meaning of rate" must be a per-unit charge that varies with the amount of groundwater extracted. The district fails to articulate why common sense supports its view. The mere fact that one can draw a distinction between a fixed rate and a per-unit rate does not justify grafting this distinction into the clearly worded statutes, which are the best indicator of legislative intent. Adopting the district's construction of these provisions would limit their scope in contravention of the policy underlying the Act, which is to ensure that property owners affected by groundwater management programs play a meaningful role in developing those programs. (*Gomes I*, *supra*, 35 Cal.App.5th at p. 259.) To be sure, the district would still have to comply with the majority-protest procedure to enact its programs, but that is only one aspect of the Act. Section 10710 requires an additional step to ensure the electorate has a more direct say if the district elects to impose rates for extracting groundwater. Under the district's view, it can deny voters that voice simply by calculating a charge based on something other than the exact amount of water the property owner extracts. Such a construction is not common sense, as the district would have us find, because it does not comport with the plain language of section 10710 or the policy underlying the Act.

Applying the clear language of these statutes, we conclude that a rate "for the extraction of groundwater" means a charge for extracting groundwater. (§§ 10708, 10710.) With this initial matter resolved, we next consider whether any of the fees charged by the district constitute a charge for the activity of extracting groundwater. Unlike the parties, we do not view this as an all-or-nothing proposition, and will discuss the challenged charges seriatim.

**B. The District's Management Charge**

We consider first the groundwater management charge that was adopted pursuant to Ordinance No. 2018-3, and then readopted or restated in Ordinance No. 2020-3. In upholding Ordinance No. 2020-3, the trial court found that this groundwater management fee is not subject to the requirements of section 10710, and we agree.[6]

Ordinance No. 2020-3 authorizes the district to collect a monthly charge that applies to all developed parcels in the district that extract groundwater *or* that receive extracted groundwater. This monthly fee funds a variety of services provided by the district, including administering a water shortage contingency plan, issuing extraction permits, reviewing studies, monitoring water levels, and operating a recycled water system. We conclude that the management charge is not a rate for extracting groundwater. It is a fee that property owners who use groundwater pay the district for groundwater management services, generally.

Gomes contends that the monthly management charge falls within the definition of a rate and intimates that the trial court concluded otherwise only because it mistakenly concluded a rate must be a per-unit charge. We agree with Gomes that a rate does not have to be a per-unit charge, but we disagree that section 10710 applies. While a management fee falls within the definition of a rate, it does not constitute a rate *for the extraction of groundwater*. In this regard, the trial court's finding that the monthly management charge is a flat amount unrelated to the quantity of groundwater each user extracts is relevant, though not dispositive. If the fee

---

[6] Gomes attempts to use this appeal to challenge the validity of Ordinance No. 2018-3. We do not entertain that new claim, and consider the 2018 ordinance only as it pertains to whether the district's management charge is subject to section 10710.

25

were based on the amount of groundwater the property owner extracted, it would be a rate for extracting ground water.  Even a flat charge for extracting groundwater would be a rate within the meaning of sections 10708 and 10710.  But the management fee does not fall within this category because it must be paid by all owners of developed property who use ground water— whether or not they are themselves engaged in "the extraction of groundwater."  The fee is for the district's services, not for the activity of extracting groundwater.

Insisting that there is no distinction between an extraction fee and a management fee, Gomes argues that section 10708 "demonstrates that fees for extraction and fees for groundwater management are inextricably linked." According to this argument, (1) section 10708 establishes that the *only* way the district can pay its groundwater management expenses is to fix and collect rates for the extraction of groundwater and, therefore, (2) any charge for management services must also be a rate for extraction of groundwater. We disagree.

For one thing, Gomes's argument misreads the language of section 10708.  This provision *authorizes* the district to use rates for the extraction of groundwater as a source for payment of its management expenses, but it does not *limit* the district to that single funding source.  Nothing in section 10708 precludes the district from paying groundwater management expenses some other way.  Gomes invokes the maxim "*expressio unius est exclusio alterius*," which states that the " 'expression of some things in a statute necessarily means the exclusion of other things not expressed.' " (*Dean v. Superior Cour*t (1998) 62 Cal.App.4th 638, 641–642.)  If the maxim applies here, it only highlights the flaw in Gomes's reading of section 10708.  Section 10708 expresses that the district "may" fix and collect rates for groundwater

extraction to pay its expenses, thereby excluding Gomes's contrary notion that the district *must* pay its expenses only by fixing and collecting rates for the extraction of groundwater. No such mandate is expressed in section 10708.

Another material flaw in Gomes's argument stems from his assumption that Water Code section 10708 is the only statutory provision that authorizes the district to charge a management fee. Water Code section 10715 of the Act states: "This part is in addition to, and not a limitation on, any powers of a local agency otherwise granted by law." As noted in our background summary, the district was established under the Community Services District Law. That law gives community services districts authority to "[e]stablish rates or other charges for services and facilities that the district provides" (Govt. Code, § 61115, subd. (a)(1) (§ 61115(a)(1))), and it regulates the manner in which the community service district may exercise this authority. (*Id.*, § 61115.) On its face, this grant of authority to establish and collect rates or other charges is not limited to the specific services enumerated in the Community Services District Law. (*Id.*, § 61115.) Thus, the district has authority to charge for its groundwater management services that is independent of, not inextricably tied to or limited by, the district's authority to fix and collect rates for the extraction of groundwater.

In his reply brief, Gomes argues unconvincingly that the Community Services District Law does not authorize the district to charge fees for groundwater management services. He posits first that the Community Services District Law "says nothing of groundwater," which may be true but is not dispositive. There is no dispute the district's authority to manage groundwater derives from the Act, rather than from the Community Services District Law. But that issue is separate from the issue here, pertaining to

27

the district's authority to charge for its groundwater management services. The Community Services District Law authorizes a district to charge for *all* of the "services . . . the district provides." (Govt. Code, § 61115(a)(1).)

Next, Gomes argues that because the Community Services District Law is a general law, while the Act is a specialized statute pertaining specifically to groundwater management, the Act must control to the extent there is any conflict between them. (Citing *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 419.) This principle has no application here, as Gomes fails to identify any conflict between the two statutes. In fact, the two complement each other. We have concluded the Act allows, but does not require, the district to impose "rates for the extraction of groundwater" (Wat. Code, §§ 10708, 10710), and the district's monthly management charge is *not* such a rate. The Community Services District Law, though it does not mention groundwater, broadly authorizes the district to charge for services it provides (Govt. Code, § 61115(a)(1)), and therefore specifically authorizes the district's charge for groundwater management services. Confirming our view that these two statutes should be read in harmony, Water Code section 10715 expressly provides that the Act is not a limitation on any power of the district "otherwise granted by law." Thus, the district was not required to comply with Water Code section 10710's requirement for an election when adopting a management charge authorized by the Community Services District Law.

## C. Permit-Related Fees

We turn next to the fees imposed pursuant to Ordinance No. 2020-1, the "Groundwater Extraction Permit Ordinance." As our background summary reflects, amounts charged for these permit-related fees are set forth in Ordinance No. 2020-3. Although these fees are different from the monthly management charge imposed pursuant to Ordinance No. 2018-3, the trial

28

court did not directly address them when concluding that the district was not required to comply with section 10710, and the parties give these fees only minimal attention.

Groundwater extraction permit fees come in three increments: fees for administrative review of a permit application, for review that encompasses a hydrological study, and for obtaining the board's permit approval. Taken together, these fees constitute a one-time charge for obtaining a groundwater extraction permit. The ordinance requires "all developed parcels" within the district to have a permit and to "limit groundwater extraction to an approved . . . allotment." Once obtained, the permit "remain[s] in effect in perpetuity or until a new Groundwater Extraction Permit is issued."

We conclude that the groundwater extraction permit charges are not a rate "for the extraction of groundwater." (§ 10710.) By paying permit-related fees, a property owner secures permission to participate in a program for the preservation of a finite groundwater resource, a program that has been implemented in accordance with sections 10703 through 10706.[7] Unless a property owner already has a permit, payment of permit fees is a prerequisite for participating in the groundwater program—which means the fees are a prerequisite for extracting groundwater within the district—but they are not themselves a charge for extracting groundwater. A property owner might pay to obtain a permit and allotment because the ordinance requires "all developed parcels" to have one, but that does not *necessarily* mean the property owner is actively engaged in extracting groundwater.

---

[7] As a reminder, in this appeal Gomes does not challenge the district's compliance with sections 10703 through 10706, nor its compliance with Proposition 218. Thus, we infer the public has already been afforded a voice on the challenged fees through these other legal procedure(s).

29

In his opening brief on appeal, Gomes takes the position that the permit fees are "rate[s] . . . for the extraction of groundwater" precisely because paying them is a "condition of using groundwater." On reply, he elaborates that the rate is "binary—either one pays for the right to extract any water or does not pay and extracts no water." He also characterizes the permit fees as a rate "charged for a threshold ability to extract groundwater." This argument has surface logic but ultimately fails to persuade.

Gomes overlooks a subtle but important distinction between a charge that is a prerequisite to an activity and a charge that is levied for actually engaging in the activity. A permit is a prerequisite to participating in an activity, here the extraction of groundwater, but having a permit does not mean the permittee is actually engaged in the permitted activity. To use the language of Gomes's brief, the permit fees are a charge on "a threshold ability to extract groundwater," but that is not the same as being a charge on the actual extraction of groundwater. Paying the fees is a necessary—but not sufficient—condition for the extraction of groundwater.

Put another way, if the permit-related fees are any kind of rate, they are a rate *for obtaining a permit* to extract the allotted amount of groundwater, not a rate for the extraction of that groundwater. The service for which the district is charging is its determination of how much groundwater a property owner may draw, consistent with the district's water use standards and a site's hydrology. The property owner pays the permit fees to obtain this assessment and approval; and the property owner pays without regard to whether—or how often—he or she actually extracts this quantity of groundwater.[8] Indeed, Ordinance No. 2020-1 requires all owners

---

[8] If the fees were a rate for extracting groundwater, we might expect them to recur for property owners who continue to extract groundwater over

of developed property to have a permit—and have paid the associated fees— even if they are not actively engaged in the extraction of groundwater.

Because permit fees are not paid for the activity of extracting groundwater, they are not "rates for the extraction of groundwater" under section 10710, and they accordingly do not trigger that provision's election procedure. (§ 10710.)

### D. Penalties

Finally, we consider penalties the district imposes for violating its groundwater ordinances. These charges include penalties for failure to comply with the permit and/or allotment requirements in Ordinance No. 2020-1, and penalties for violating water conservation measures in Ordinance No. 2020-2. We conclude these penalties are not charges for extracting groundwater, but fines for violating the ordinances. Thus, to the extent the ordinances are otherwise valid, so too are the penalties, without regard to section 10710.

In his opening brief, Gomes contends the district's "penalty structure . . . fixes rates for the extraction of groundwater," pointing out that groundwater extraction above the allotted level results in a penalty calculated at "a rate of two cents per gallon of excess use per month, up to 10 [percent] overage," and a higher rate for larger overages. We reject Gomes's effort to equate this penalty rate, even though based on the size of the overage, with a rate "for the extraction of groundwater." The penalties imposed in the 2020 measures are not triggered by extracting groundwater

---

time, or perhaps to vary in some fashion with the amount of water being extracted. We have expressly rejected that a "rate" for extracting groundwater must be a per-unit charge (*ante*, at p. 21), but we note that Ordinance No. 2020-1 requires a permit applicant to install a water meter, so the district has the ability to monitor whether, and to what extent, a property owner is extracting groundwater.

31

*except* to the extent any such extraction is done in violation of the ordinances. Property owners who extract groundwater are not otherwise required to pay these penalties. And case law reinforces that a penalty is not a charge paid for a service or benefit. (See, e.g., *Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 795.) Civil penalties provide a "mechanism for enforcing a regulatory scheme." (*Los Angeles Unified School Dist. v. Superior Court* (2021) 64 Cal.App.5th 549, 565.) They " 'may have a punitive or deterrent aspect, [but] their primary purpose is to secure obedience to statutes and regulations imposed to assure important public policy objectives.' " (*City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1315.)

In his reply brief, Gomes argues that penalties should not be exempted from the requirements of section 10710 because such an exception could swallow the rule that rates for extracting groundwater require voter approval. Focusing on the allotment penalty, Gomes envisions a program in which the property owner's allotment is so low that a violation is inevitable and becomes, in essence, the rate being charged for extracting groundwater. Gomes's hypothetical is inapposite because it does not fit the facts of the case. There is no argument in this appeal that the allotment levels have been set artificially low. And a property owner's allotment may be enforced, not only with a financial penalty, but also with misdemeanor criminal sanctions. Thus, there is no dispute here as to whether the allotment penalty is really a penalty. The only question is whether it constitutes a rate for the extraction of groundwater. We conclude that even if the penalty is a rate, it is not charged for the extraction of groundwater. It is a fine imposed for violation of the ordinance.

## DISPOSITION

The judgment is affirmed.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*Gomes v. Mendocino City Community Services District* (A167862)

Trial Court:          Mendocino County Superior Court

Trial Judge:         Hon. Jeanine B. Nadel

Counsel:            Vannucci Momsen Morrow, and Colin W. Morrow for Plaintiff and Appellant

Shute, Mihaly & Weinberger, Joseph D. Petta, Matthew D. Zinn, Seth Goldman; and Stokes, Hamer, Kirk & Eads, Chris Carol Hamer for Defendants and Respondents